FILED & JUDGMENT ENTERED
Steven T. Salata

Jul 26 2016

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION

In Re:                                    )
                                          )   Chapter 11
ELK CREEK INTERNATIONAL, INC.,)   Case No. 16-50423
                                          )
         Debtor.                          )

## SECOND INTERIM ORDER AUTHORIZING (A) INTERIM USE OF CASH COLLATERAL PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE; (B) GRANTING ADEQUATE PROTECTION; AND (C) SCHEDULING A FINAL HEARING ON THE MOTIONS

THIS MATTER came before the Court on July 21, 2016 for the continued hearing on the emergency motions of Elk Creek International, Inc., the above-captioned debtor and debtor in possession herein (the "Debtor"), for the entry of a second interim order authorizing the Debtor to use of cash collateral and providing adequate protection for the use thereof, pursuant to sections 105, 361, and 363 under Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") and Rules 4001, 6003(b) of the Federal Rules of Bankruptcy Procedure (the "Motion"), on a preliminary basis through the date of a final hearing on the Motion

The Court having reviewed the Motion; and upon completion of the continued preliminary hearing as provided for under Bankruptcy Rule 4001(b), the testimony and evidence provided and the arguments of counsel;

**THE COURT HEREBY FINDS:**

A.   The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

B.   The Debtor has provided notice to creditors with an interest in cash collateral and such creditors were represented by counsel at the continued hearing.

C.  The Debtor has immediate cash needs in order to meet payroll, to pay other customary and necessary day to day expenses to operate its business and to prevent immediate and irreparable harm to the estate.

D.  The Debtor's use of the Cash Collateral is necessary, essential and appropriate for the operation of the Business and for payment of the Cash Collateral Budget Expenses, and is otherwise necessary to avoid immediate and irreparable harm to the Debtor's estate pending a final hearing on the Motion.

E.  The Debtor's use of Cash Collateral on an interim basis in accordance with the Budget attached to the Motion (the "Budge") and the terms and conditions set forth herein appears to be in the best interest of the estate and its creditors. Among other things, the entry of this Order will minimize disruption of the Debtor's business and operations as a going concern and is in the best interests of the Debtor, its creditors, and its estate. It is further in the best interests of the Debtor's estate to provide the Secured Creditors with adequate protection of their interests in the Collateral as set forth herein.

F.  The Debtor may use Cash Collateral only during the period beginning with the entry of this Order, and continuing through August 10, 2016 (the "Continued Hearing"), consistent with the Budget and in the ordinary course of business for necessary post-petition expenses which are critical to the survival of the Debtor. The Debtor is not allowed otherwise to use Cash Collateral to pay any claims which arose prior to the July 5, 2016 filing date. The Debtor shall also be authorized to pay any quarterly fees from the cash collateral and such fees shall be escrowed with counsel for the Debtor on a timely basis.

G.  The Debtor shall not use, sell or expend, directly or indirectly, Cash Collateral or any proceeds, products or offspring thereof, except as authorized in this Second Interim Order.

H.  The Debtor's authority to use Cash Collateral in accordance with the terms and conditions set forth herein shall terminate at 11:59 p.m. on the date of the Continued Hearing, unless the Court further authorizes the use of Cash Collateral at the Continued Hearing on the Motion or upon mutual consent of the affected parties. Even if authorization to use cash collateral expires, adequate protection/liens will continue to be effective unless or until otherwise modified by the Court.

I.  The Debtor's Motion alleges that the UCC filings with the North Carolina Secretary of State show the following creditors (the "Secured Creditors") may assert a perfected security interest in the Debtor's cash collateral:

    a.  Yadkin Bank (UCC-1s filed July 9, 2014 under ECI, ECL and ECP);
    b.  Export-Import Bank of the United States ("Ex-Im Bank")(UCC-1 filed November 24, 2014 under ECL only).

J.      The Debtor reaffirms the existing terms and conditions of existing financing documents with Yadkin Bank and Ex-Im Bank.

K.      As adequate protection for the interests of Yadkin Bank and Ex-Im Bank in Cash Collateral, to the extent the Debtor uses such Cash Collateral, the following terms shall apply:

   1.   Replacement Liens. Yadkin Bank and Ex-Im Bank are granted valid, attached, choate, enforceable, perfected and continuing security interests in, and liens upon all post-petition assets of the Debtor of the same character and type, to the same extent and validity as the liens and encumbrances of the Secured Creditors attached to the Debtor's assets pre-petition (the "Post-Petition Collateral"). The security interests in, and liens upon, the Post-Petition Collateral shall have the same validity as existed between the Secured Creditors, the Debtor and all other creditors or claimants against the Debtor's estate on the Petition Date. Said liens shall be deemed for all purposes to have been properly perfected, without filing, as of the entry of this Order. Notwithstanding anything to the contrary in this Interim Order, the Replacement Liens shall not attach to causes of action arising under Chapter 5 of the Bankruptcy Code or the proceeds thereof. The lien of Yadkin Bank shall not extend to lumber or other wood products which are purchased by third parties (including but not limited Ashley Furniture Industries, Inc. ("Ashley") and Concannon Lumber Company ("Concannon") and shipped to the Debtor under bailment for processing.

   2.   Insurance. The Debtor shall at all times maintain such insurance as is required under the Yadkin Bank and Ex-Im Bank Security Agreements with one or more insurance companies, and shall name Yadkin Bank and Ex-Im Bank as beneficiaries, with written evidence of adequate insurance to be provided immediately to Yadkin Bank and Ex-Im Bank, and upon request thereafter.

   3.   Beginning Monday July 25, 2016 and continuing each Monday thereafter, Debtor shall make weekly reports to Yadkin Bank, Ex-Im Bank and the U.S. Bankruptcy Administrator regarding use of cash, aging of accounts receivable, revenues and expenses.

   4.   Throughout the time this Second Interim Order and any subsequent Cash Collateral Orders are in effect, Debtor shall maintain accounts receivable in the minimum amount of $10,000.00. In the event of Debtor's default under this provision or in the event of any other material default, Debtor acknowledges and stipulates to Yadkin Bank's or Ex-Im Bank's entitlement to an emergency hearing regarding any such default.

L.      This Second Interim Order is without prejudice to the rights of the any secured creditors or other creditors to seek additional adequate protection or other relief available under the Bankruptcy Code, and entry of this Second Interim Order is without prejudice to the rights of any party in interest to challenge or otherwise contest entry of a final order authorizing the use of Cash Collateral.

M.      This Second Interim Order is also entered without prejudice to: (a) the claims,

rights, and defenses that the Debtor and/or any other party in interest may have to challenge the nature, validity, priority or extent of the liens asserted by any party; and (b) any and all claims, rights, and defenses any party in interest may assert in any action to challenge the nature, validity, priority or extent of the liens it may assert.

N.  The following events shall constitute events of default under this Second Interim Order and shall immediately terminate the use of Cash Collateral hereunder: conversion of the Debtor's case to chapter 7 of the Bankruptcy Code, or appointment of a trustee or examiner with expanded powers.

O.  This Second Interim Order shall in no way limit the rights of the Debtor, any official unsecured creditors committee or any other party in interest to investigate and/or challenge the validity and/or priority of the liens on any of the Debtor's assets.

P.  The evidence presented to the Court demonstrates that there is a reasonable likelihood that the Debtor will prevail at a final hearing under 11 USC Section 363(e), and that therefore the Court has the authority to grant the Motion. It appears to the Court that there is at least a prospect that the Debtor can successfully reorganize, and there is nothing to suggest that there is no possibility that the Debtor can successfully reorganize. The evidence further indicates that a replacement lien on the Debtor's post-petition accounts receivable are sufficient to adequately protect (pursuant to 11 USC Section 361) the secured creditor's interest in the Debtor's accounts receivable as of the filing date, which amounted to approximately $54,000.00. That being said, the Court will keep the Debtor on a tight leash and if there are signs of financial trouble the Court will react appropriately.

Q.  Based on the forgoing, the Debtor's Motion to use cash collateral should be and hereby is GRANTED, subject to the expenses set forth in the Budget and the conditions in this Order.

R.  A final hearing on the use of Cash Collateral shall be held on August 10, 2016 at 9:30 a.m. (the "Final Hearing"), in the United States Bankruptcy Court, Charles R. Jonas Federal Building, 401 West Trade Street, Charlotte, North Carolina 28202.

S.  Any party wishing to object to the relief granted herein being allowed on a continuing interim or final basis shall file such objection with the Court in accordance with the Local Rules of the United States Bankruptcy Court, together with proof of service thereof, showing service upon all interested parties, so as to be received no later than three (3) business days prior to the Final Hearing.

T.  The Debtor is directed to serve a copy of this Order upon: (a) the Bankruptcy Administrator for the Western District of North Carolina, (b) the Debtor's twenty (20) largest unsecured creditors, (c) all creditors having filed UCC-1's with the North Carolina Secretary of State, (d) the Debtor's pre-petition utility providers , and (e) those parties requesting notice pursuant to Bankruptcy Rule 2002, within three (3) days after its entry and shall file a certificate of service specifying the manner and method of service.

U.  Any party in interest may file a motion for the examination of any of the

Debtor's owners or employees, and the Debtor shall cooperate with any party in interest in timely scheduling such an examination.

This Order has been signed electronically. The judge's signature and court's seal appear at the top of the Order

United States Bankruptcy Court